**SIGNED THIS: September 18, 2024**

_____
**Peter W. Henderson**
**United States Chief Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

In re:

JAMES THOMAS A. JONES,

Debtor.

Case No.  24-80205

**OPINION**

  The Chapter 13 Trustee has objected to the Debtor's plan. He currently commits $305 per month to repay a retirement loan that will be completely paid off in July 2026. The Trustee argues that he should be required to increase his monthly plan payments by $305 once the loan is paid off. The Debtor instead proposes to contribute those extra funds to his ERISA-qualified, employer-sponsored retirement plan. Because the Debtor is entitled to direct those funds towards a qualified retirement plan rather than his unsecured creditors under the Bankruptcy Code, the Trustee's objection will be overruled. The plan may be confirmed once the Debtor (1) resolves the Court's concern about his income on Schedule I and (2) inserts a provision requiring him to make the retirement contributions he proposes in month 29 of the plan.

1

I.     Background

The Debtor filed a Chapter 13 bankruptcy petition in March 2024. His schedules disclose that he earns gross income of $7,286.93 per month. His take-home pay, after payroll deductions, totals $4,748.01. He calculates his monthly expenses to be $4,208.51, leaving $539.50 as monthly net income. He has two dependents. His average monthly income for the six months preceding the bankruptcy filing was $7,134.13, which is below the median for a household size of three in Illinois. The Debtor filed a plan that commits $536 per month to his creditors for a period of 40 months, for a total of $21,440. The plan will pay approximately 56% of the filed general unsecured claims.

The Chapter 13 Trustee has lodged two objections to the plan. First, she believes that the Debtor's income is understated. The pay advices provided to the Court show that the Debtor earned a total of $90,938.47 in 2023, for an average monthly income of $7,578.20—about $300 more than he claimed on his schedules. The Trustee requested that the Debtor file an amended Schedule I to reflect the higher number, but he believes he has it right, asserting that his income in 2022 and 2023 was $84,641.49 and $88,938.47 respectively. The Court does not understand the Debtor's math. Averaged together, over 24 months the Debtor earned $7,232.50 per month, but that figure is not the one listed on Schedule I, nor would it be appropriately listed because Schedule I is intended to capture current income, which appears to be higher. (The Debtor's figure for 2023 reflects monthly income of $7,411.) The Trustee's request that the Debtor file an amended Schedule I is well taken and will be granted. The parties are always free to agree upon a number they both feel accurately represents the Debtor's income.

A dispute over income is not the main event, though. The Debtor represents that now and at the time of filing he contributes 10% of his gross income to his employer-sponsored retirement plan, proof of which is established by the pay advice immediately preceding his bankruptcy filing. The Trustee notes that since September 2023, he has contributed 8% of his gross income to those accounts. It is undisputed that the Debtor's contributions are withheld from his wages for payment as contributions to an ERISA-qualified employee benefit plan. See 11 U.S.C. §541(b)(7).

The Debtor is also currently repaying a loan he took out against his retirement accounts. He pays $305 per month towards the loan, which will be fully repaid in July 2026. Once the loan is paid off, in what will be month 29 of the plan, the Debtor wishes to increase his voluntary contributions to the retirement programs by $305. The Trustee objects to that proposal and argues that the now-freed-up $305 should be committed to the plan for the benefit of general unsecured creditors from month 29 onwards.

2

**II.    Analysis**

The dispute over a debtor's ability to increase his voluntary contributions to an ERISA-qualified, employer-sponsored retirement program during a Chapter 13 plan period is not a new one, although this judge has not yet had an opportunity to weigh in. See *U.S. Trustee v. Kubatka (In re Kubatka)*, 605 B.R. 339, 361–63 (Bankr. W.D. Pa. 2019) (citing cases). The Court doubts it has much new to say about the subject apart from picking one of the three prevailing views of the issue. Still, it is worth explaining why only one approach appears to be consistent with the text of the Code and the reason Congress enacted the applicable statutory provisions that govern. See *Baxter v. Johnson (In re Johnson)*, 346 B.R. 256 (Bankr. S.D. Ga. 2006). Happily, it is the approach favored by most bankruptcy courts. *Kubatka*, 605 B.R. at 361.

**A.    A Chapter 13 debtor is entitled to make qualified retirement contributions that will reduce his disposable income under §1325(b).**

Section 1325(b)(1)(B) of the Code does not permit a court to confirm a Chapter 13 plan over the trustee's objection unless the plan "provides that all of the debtor's projected disposable income to be received in the applicable commitment period … will be applied to make payments to unsecured creditors under the plan." The Code does not define "projected disposable income," but it does define "disposable income" for purposes of §1325(b) as "current monthly income received by the debtor … less amounts reasonably necessary to be expended" for the maintenance and support of the debtor and his dependents. 11 U.S.C. §1325(b)(2). "Current monthly income" is itself a defined term, but its contours are not relevant here. 11 U.S.C. §101(10A)(A)(i). Instead, the debate here centers around a provision, not in §1325, but in §541(b):

> Property of the estate does not include … any amount … withheld by an employer from the wages of employees for payment as contributions … to [a qualified retirement plan] … except that such amount under this subparagraph shall not constitute disposable income as defined in section 1325(b)(2).

11 U.S.C. §541(b)(7)(A). A similar provision applies to money "received by an employer from employees for payment" to a qualified retirement plan; that money too "shall not constitute disposable income as defined in section 1325(b)(2)." *Id*. §541(b)(7)(B).

So when determining disposable income, a debtor need not include earnings that are withheld or contributed through his employer to a qualified retirement plan. That is

3

what the statute plainly says. "Such amount … shall not constitute disposable income" under §1325(b)(2). There is no ambiguity.

The Trustee argues that §541(b)(7) refers only to prepetition contributions. "It makes little sense to place a post-petition disposable income exception in [§541]," she argues, because that section "identif[ies] what assets come into the estate *at commencement*." Doc. #34 at 4 (emphasis in original). Instead, she contends, Congress would have placed the provision in Chapter 13, like the provision excepting retirement loan repayments, 11 U.S.C. §1322(f), if it had intended to account for post-petition earnings. Sensibly placed or not, the language in §541(b)(7)'s hanging paragraph ("except that such amount …") is unambiguous: qualified retirement contributions are not disposable income under §1325(b)(2). No statute other than §1325(b)(2) informs the determination of projected disposable income under §1325(b)(1)(B). This Court, like the majority of bankruptcy courts, will not disregard explicit statutory directives on the view that they should have been codified on a different page of the Bankruptcy Code. See *In re Garza*, 575 B.R. 736, 747 (Bankr. S.D. Tex. 2017) (citing cases).

Besides, putting the directive in §541 isn't that strange. Chapter 5 applies in cases under Chapters 7, 11, 12, and 13. 11 U.S.C. §103(a). Chapters 11 and 13 both rely upon the definition of disposable income in §1325(b)(2). 11 U.S.C. §§1129(a)(15)(B), 1325(b)(1)(B). What better place to put a directive about specific retirement contributions not qualifying as disposable income under two different chapters than in Chapter 5 next to the very particular definition of those contributions?

The Trustee's argument centers on the interplay between §541(a) and §541(b)(7). Section 541(a)(1) defines property of the estate broadly to include "all legal or equitable interests of the debtor in property as of the commencement of the case," except as provided in §541(b) and (c)(2). Section 541(b)(7) excludes from the estate "any amount" withheld by an employer from the wages of employees, or any amount received by an employer from employees, for payment as contributions to an ERISA-qualified retirement plan. Because §541(a) is temporally limited to the "commencement of the case," the Trustee argues, the exception in §541(b)(7) must be similarly limited. The Trustee's position is supported by *In re Seafort*, in which the Sixth Circuit read §541(b)(7) "in the larger context of §541(a)(1)" and concluded that "Congress limited the type of contributions … that would be excluded from disposable income, namely those 'under this subparagraph,' §541(b)(7)(A), which in turn governs only those contributions in effect as of the commencement of a debtor's bankruptcy case, per §541(a)(1)." 669 F.3d 662, 672–73 (2012).

4

*Seafort* used the wrong context and ignored the plain text. Section 541(b)(7)(A) says that "such amount under this subparagraph shall not constitute disposable income." "Such" is a pointing word (a "deictic term") that points directly at an antecedent. Bryan A. Garner, Garner's Modern English Usage 706–07, 873 (4th ed. 2016). Our "such" points to the amount *under this subparagraph*, that is, "any amount" of qualified contributions as defined in subparagraph §541(b)(7)(A) and (B).[1] "Such amount" does not point to §541(a)(1) or its limitation to the commencement of the case. That language does not appear "under [] subparagraph" (A) or (B) of §541(b)(7).

It is unclear why the Sixth Circuit thought that §541(a)(1) is the only provision that interacts with §541(b)(7). Post-petition earnings, which are the source of "any amount" of qualified retirement contributions in Chapters 11 and 13, are addressed in §541(a)(6) and made property of the estate in individual reorganization cases by §§1115(a)(2) and 1306(a)(2). Moreover, the relevant portion of §541(b)(7) here focuses not on property of the estate, §541(a), but on disposable income, §1325(b)(2). Read in its proper context—the determination of disposable income in individual reorganization cases—§541(b)(7) directs that "any amount" of retirement contributions that qualifies "under this subparagraph" is not disposable income, whether the amount comes from pre- or post-petition earnings. See *In re Egan*, 458 B.R. 836, 845–46 (Bankr. E.D. Pa. 2011).

That does not mean that the amount at the time of filing is irrelevant. Projected disposable income under §1325(b)(1)(B) depends upon both historical disposable income and known or virtually certain future changes to disposable income. *Hamilton v. Lanning*, 560 U.S. 505, 517 (2010). It is sensible to treat the amount a debtor contributed to his retirement funds at the time he filed his petition as the presumptive amount he need not count as disposable income under §541(b)(7). See *id.* at 520. But it is only a presumption; if it is known or virtually certain that the debtor will commit more to his retirement plan "in the applicable commitment period," §1325(b)(1)(B), the bankruptcy court can and should determine his projected disposable income in light of that information. See *id.* at 517; 11 U.S.C. §541(b)(7).

*Seafort* endorses a mechanical approach to §541(b)(7): retirement contributions made at the time of filing are not disposable income, but a debtor may not increase those contributions during the plan. 669 F.3d at 674. That is the sort of backward-

---

[1] A "subparagraph" in legislative drafting refers to the unit of organization within a statute that is denoted by an upper-case letter—here, (A) and (B). See Office of the Legislative Counsel, *House Legislative Counsel's Manual on Drafting Style* §312 (Dec. 2022), available at https://legcounsel.house.gov/sites/evo-subsites/legcounsel-evo.house.gov/files/documents/ManualDraftStyle_2022.pdf

5

looking, mechanical approach to "projected disposable income" that the Supreme Court rejected in favor of a more flexible, forward-looking approach. *Lanning*, 560 U.S. at 517. And it does not comport with §1325(b)(1), which looks to disposable income "as of the effective date of the plan," not as of the petition date. See *id*. at 518. *Seafort* uses selective context to interpret the statute in a way that contradicts the Supreme Court's approach to projected disposable income. It is not persuasive.

The parties here agree that it is "known or virtually certain" the Debtor will have an extra $305 per month in income towards the end of his 40-month commitment period. That money is currently excepted from disposable income under §1322(f). The Debtor proffers that he will increase his qualified retirement contributions by that amount at that time. Provided he does so, the $305 will still not represent disposable income, because qualified retirement contributions are not disposable income for purposes of §1325(b). 11 U.S.C. §541(b)(7).

The plan does not currently address the extra $305. The plan may be confirmed if the Debtor adds a provision to paragraph 11 of his plan that requires him to apply that money to his qualified retirement plan in month 29. Failure to adhere to that provision would provide cause to dismiss the case, 11 U.S.C. §1307(c)(6), or to modify the plan on the Trustee's motion, 11 U.S.C. §1329.

### B. The plan was not proposed in bad faith.

The Trustee finally argues that the Debtor has taken too many steps to "shield" his income from unsecured creditors by increasing his voluntary retirement contributions. He is "merely seeking to enrich himself and his retirement account purely at the expense of unsecured creditors." Doc. #34 at 5. If this Debtor is permitted to increase his retirement contributions, she argues, soon all debtors with disposable income will max out their retirement contributions rather than pay their creditors. *Id*. So even if the retirement contributions are not disposable income, she opposes confirmation of the plan for lack of good faith. 11 U.S.C. §1325(a)(3).

The Court again disagrees. The Bankruptcy Code balances the interests of creditors against the Debtor's fresh start according to policy choices that Congress has made. Section 541(b)(7) is one such choice. It is not irrational for Congress to prefer that Chapter 13 debtors contribute post-petition earnings to tax-advantaged retirement accounts, which are subject to contribution limits and withdrawal penalties, rather than pay their unsecured creditors a larger dividend. Debtors who can sustain themselves in retirement need not depend upon and strain government resources. In 2005, the President of the United States, whose party controlled both houses of Congress,

promoted "voluntary personal retirement accounts"[2] as the "best way" to "fix" Social Security for younger workers in his State of the Union address. 151 Cong. Rec. S879 (Feb. 2, 2005). Two months later, Congress enacted §541(b)(7). Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, §323, Pub. L. 109-8, 119 Stat. 23 (Apr. 20, 2005). The Act was intended to "allow[] debtors to shelter from the claims of creditors certain education IRA plans and retirement pension funds." H.R. Rep. 109-31, at 2, 18 (Apr. 8, 2005).[3] The ability of debtors to "shield" their income from unsecured creditors by contributing to a qualified retirement account is a feature, not a bug.

Good faith is "a term incapable of precise definition"; it is a fact-intensive determination left to the bankruptcy court's discretion. *Matter of Love*, 957 F.2d 1350, 1355 (7th Cir. 1992). The facts of this case do not suggest a lack of good faith. The Debtor has made consistent retirement contributions in the past, and he proposes increasing those contributions only once his loan repayments are concluded. The Debtor will still make meaningful payments to his unsecured creditors (about 56%, according to him). The plan does not present anything near the sort of serious misconduct or abuse that might cause the Court to question the Debtor's good faith in proposing it. See 8 Collier on Bankruptcy ¶1325.04[1] ("Only if there has been a showing of serious debtor misconduct or abuse should a chapter 13 plan be found lacking in good faith."). Indeed, the Court would likely abuse its discretion if it were to find that taking advantage of the Code's benefits represents a lack of good faith. Cf. *Anderson v. Cranmer*, 697 F.3d 1314, 1319 (10th Cir. 2012) ("When a Chapter 13 debtor calculates his repayment plan payments exactly as the Bankruptcy Code and the Social Security Act allow him to, and thereby excludes SSI, that exclusion cannot constitute a lack of good faith.").

The Trustee's objection to the Debtor's plan is therefore overruled in part. So long as the Debtor agrees in his plan that he will increase his retirement contributions upon the expiration of his retirement loan repayments, he will not be required to increase his monthly plan payments. See separate order.

# # #

---

[2] The President described "voluntary personal retirement accounts" as similar to Thrift Savings Plan accounts, which are essentially 401(k) accounts for federal employees.

[3] Available at https://www.congress.gov/congressional-report/109th-congress/house-report/31/1?outputFormat=pdf.